FRED A. GROUT, APPELLEE, V. JOHN H. MEYER, APPELLANT.

FILED SEPTEMBER 28, 1912.   No. 17,090.

Evidence examined and referred to in the opinion, *held* sufficient to sustain the findings and judgment of the trial court.

APPEAL from the district court for Wheeler county: JAMES R. HANNA, JUDGE. *Affirmed.*

*G. N. Anderson,* for appellant.

*A. L. Bishop, contra.*

FAWCETT, J.

Plaintiff instituted this action in the district court for Wheeler county to recover a balance of $360.02 claimed to be due to plaintiff for wintering 202 head of cattle between the 1st day of December, 1908, and May 1, 1909. Defendant conceded the making of the contract alleged by plaintiff, substantially as alleged, and admits that

plaintiff himself until March 1, 1909, and by his agent for the remaining two months, fed and cared for the cattle. The only real controversy in the case is over defendant's counterclaim for five head of cattle which he claims were missing at the time he retook possession on May 1. There was a trial to the court without the intervention of a jury, which resulted in findings and judgment for plaintiff for $340.08. Defendant appeals.

The month of April, 1909, ended on Friday. Plaintiff's agent, in charge of the cattle, testified that on the Sunday previous defendant promised that he would take the cattle away on Friday, April 30; that on that day he hauled four loads of hay to the pasture or corral where the cattle were being kept and fed it to them; that this was the last hay he had; that on the day previous he had counted the cattle and they were all there, and that on the evening of April 30 he closed the gate and securely wired it. Mr. Munsinger, a disinterested witness who resided within five rods of the corral, testified that the cattle got out that night. He was unable to state the time exactly, but fixed it somewhere about 11 o'clock. As to the conditions next morning, he testified that he was familiar with the gate; noticed it the evening of April 30; that it was wired up as testified to by plaintiff's agent; that he examined the gate "to see why the cattle had gotten out, and found the gate lying straight out, turned straight out and the cattle were all out on the meadow;" that this was the only opening in the fence through which they could have passed; that the other gates were all closed; that the gate stood straight out from the fence. Upon being interrogated by the court, he testified that the gate was not broken, but had by some means been thrown wide open; that the cattle did not seem to have touched the gate when they came out. On cross-examination he testified that the wire with which the gate had been fastened was "thrown down about three feet from the post where it was wired up to the gate." He drove or assisted in driving the cattle back into the pasture. He

also testified as to having counted the cattle twice that morning. His first count was 207 and his second 202, which would be the right number. Defendant testified that he went to get the cattle in the afternoon of May 1; that his son and a gentleman who happened to be passing counted and found there were only 194, which would be eight head short; that he hired a man to assist him to hunt for the cattle; that they succeeded in finding three, but that five of his largest steers never were found, and for the value of those steers and the expense of hunting them he claimed damages in the sum of $295.

It will be seen that the testimony of plaintiff's agent, as to the closing of the gate and fastening it with wire on the evening of April 30, is corroborated by Mr. Munsinger, and the testimony of the latter, as to the position of the gate and of the wire which had fastened it the night before, is uncontradicted. In the light of this testimony, we are not prepared to say that the district court erred in holding, as it must have done, that the escape of the cattle from the corral on the night of April 30 was not due to any negligence on the part of plaintiff or his agent. It is evident that someone opened the gate that night, as the conditions described by the witness Munsinger entirely negative the idea that the cattle broke out. The duty of plaintiff was to use reasonable care and diligence in safely keeping and caring for the stock. If the five head of cattle, which were never found, were stolen that night, plaintiff would not be liable for their loss; and, as the five head in controversy were not found, after the diligent search which defendant testified to having made for them, the inference is very strong that they were stolen. But, even if they were not stolen, if the opening of the gate on that night was the act of some evilly disposed person—an act of vandalism—we do not think plaintiff would be liable for the steers which strayed away after they had thus been turned out. Upon a review of the whole record, we think the district court was right in holding that plaintiff had fulfilled his contract. As will

be seen, the case is purely one of fact. No questions of law are involved which require consideration. The trial court saw the witnesses upon the stand and made its findings. We cannot say that the findings are not sustained by sufficient evidence.

The judgment of the district court is therefore

AFFIRMED.